**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANDREW CHASE WILKIE,

    Petitioner,

vs.                                        Case No.:    3:16-cv-1007-J-34JBT
                                                                 3:10-cr-276-J-34JBT

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Andrew Chase Wilkie's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 2; § 2255 Motion) and Memorandum in Support (Civ. Doc. 3; Memorandum).[1] Wilkie alleges that he received ineffective assistance of counsel regarding plea negotiations and sentencing. The United States responds that the § 2255 Motion is untimely. (Civ. Doc. 7; Response). Wilkie filed a reply and an accompanying affidavit, which, liberally construed, suggests that Wilkie claims a right to equitable tolling. (Civ. Doc. 10; Reply); (Civ. Doc. 10-1; Affidavit). The matter is ripe for a decision.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and

---

[1] Citations to the record in the underlying criminal case, <u>United States vs. Andrew Chase Wilkie</u>, No. 3:10-cr-276-J-34JBT, are denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-1007-J-34JBT, are denoted as "Civ. Doc. __." Citations to page numbers refer to the number designated by CM/ECF.

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Wilkie's § 2255 Motion is due to be dismissed.

## I.     Background

The facts of the underlying offenses are thoroughly recounted in United States v. Godwin, 765 F.3d 1306, 1310-13 (11th Cir. 2014), but the Court briefly summarizes them here. Wilkie was a member of a dog tag-wearing gang named "The Guardians," which tried to model itself after the infamous "Hell's Angels" motorcycle gang. Over a span of 15 months between 2009 and 2010, the group terrorized people in and around Jacksonville, Florida by committing a series of crimes, including armed bank robberies, home invasion robberies, fencing stolen items, stockpiling firearms and body armor, selling drugs, and beating one man, Dillon Burkhalter, to the brink of death. As a member of The Guardians, Wilkie held the title of "the Enforcer." In that role, he participated in the savage attack on Burkhalter, the home invasion robberies of Brigg and Lita Hart, Harold and Vicki Shafer, and Robert and Larita Holland (where Wilkie put a gun to the head of the Hollands' son)[4], as well as the attempted robbery of an EverBank branch, just to name a few.

---

[3]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

[4]     (See Presentence Investigation Report [PSR] at ¶¶ 77-80); (Crim. Doc. 411 at 42-43).

On October 20, 2011, a grand jury sitting in the Middle District of Florida returned a Second Superseding Indictment against Wilkie and several co-defendants. (Crim. Doc. 138; Second Superseding Indictment). The grand jury charged Wilkie with one count of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), pursuant to 18 U.S.C. § 1962(c) (Count One), one count of conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d) (Count Two), and one count of committing a violent crime in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(4) and 2 (Count Three). As part of Count One, the grand jury charged Wilkie with committing 14 racketeering acts, including extortion, home invasion robbery, bank robbery, and the distribution of steroids, cocaine, and oxycodone. Second Superseding Indictment at 6-17. Wilkie initially pled not guilty to the charges. (Crim. Doc. 142; Minute Entry for Re-arraignment).

On March 19, 2012, Wilkie pled guilty to Counts One and Two pursuant to a written Plea Agreement. (Crim. Doc. 202; Plea Agreement). In doing so, Wilkie admitted to committing four racketeering acts related to Count One, consisting of three acts of home invasion robbery and one act of bank robbery. Plea Agreement at 1-2. In exchange for his guilty plea, the United States agreed to dismiss Count Three of the Second Superseding Indictment. Id. at 7. The Court determined that Wilkie's guilty plea was knowingly and voluntarily made and adjudicated him accordingly. (See Crim. Doc. 203; Report and Recommendation Concerning Plea of Guilty); (Crim. Doc. 264; Acceptance of Guilty Plea).

At his sentencing hearing, the Court determined that Wilkie's unadjusted advisory sentencing range under the United States Sentencing Guidelines was between 292 and 365 months in prison, based on a total offense level of 38 and a Criminal History Category of III. (Crim. Doc. 411; Sentencing Tr. Vol. III at 89). However, the Court determined that

the severity of Wilkie's offense conduct – in particular, the fact that Wilkie committed several violent home invasion robberies – warranted a sentence above the Guidelines range. (See Crim. Doc. 410; Sentencing Tr. Vol. II at 157); (Crim. Doc. 411; Sentencing Tr. Vol. III at 106-08); (Crim. Doc. 415; Sentencing Tr. Vol. IV at 4-11). As such, the Court applied a two-level upward departure under U.S.S.G. § 5K2.0, bringing Wilkie's total offense level to 40 and yielding an advisory Guidelines range of 360 months to life in prison. Sentencing Tr. Vol. II at 157; Sentencing Tr. Vol. III at 108. The Court noted in the alternative that even if it had not applied the upward departure, the facts would have supported an upward variance under 18 U.S.C. § 3553(a). Sentencing Tr. Vol. II at 157. Ultimately, the Court sentenced Wilkie to concurrent terms of 420 months in prison with respect to Counts One and Two, followed by a 5-year term of supervised release. Sentencing Tr. Vol. IV at 9-10; (Crim. Doc. 366; Judgment).

Wilkie appealed the sentence, "argu[ing] that the district court erred in departing from the Guidelines sentence range under § 5K2.0, because the underlying basis for the departure—robberies taking place at victims' homes—was not a permissible ground for a departure." United States v. Wilkie, 589 F. App'x 504, 505 (11th Cir. 2015). Wilkie also challenged the sentence as substantively unreasonable. Id. The Eleventh Circuit rejected both of Wilkie's arguments. Id. at 505-06. The court explained, among other things, that even if it was erroneous to apply an upward departure under U.S.S.G. § 5K2.0, an upward variance under the § 3553(a) factors would have been appropriate "because the record demonstrates that Wilkie's offense conduct included breaking into a home, holding a victim at gunpoint, tying her up, and ransacking her house for valuables." Id. at 506. Thus, the Eleventh Circuit affirmed Wilkie's conviction and sentence.

The Eleventh Circuit issued its opinion on January 2, 2015. Wilkie did not petition the United States Supreme Court for a writ of certiorari. As such, Wilkie's conviction and sentence became final 90 days later, on April 2, 2015, when the time to file a petition for certiorari review expired. See Clay v. United States, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires.").

## II.     The § 2255 Motion

More than a year later, on July 27, 2016, Wilkie filed the instant § 2255 Motion. See § 2255 Motion at 12; Houston v. Lack, 487 U.S. 266, 276 (1988) (a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing). In it Wilkie raises two claims of ineffective assistance of counsel. First, he argues that counsel gave ineffective assistance during plea negotiations because counsel failed to advise Wilkie "what he would be pleading guilty to" and "what constitutional rights the defendant would be waiving by entering into the plea agreement." Id. at 4.[5] Second, Wilkie claims that counsel gave ineffective assistance at sentencing by failing to prevent the introduction of hearsay testimony, which Wilkie claims was used to enhance his sentence. Id. at 5. Wilkie also suggests that counsel abandoned him mid-way through the sentencing proceedings, after defense counsel had accepted a job with the local State Attorney's Office. See id.[6]

---

[5]   The transcript of the change-of-plea colloquy shows that the Court explained to Wilkie the various rights he waived by pleading guilty, as well as the charges, their elements, and the maximum penalties, and that Wilkie understood each of those things. (Crim. Doc. 428; Plea Tr. Vol. II at 6-15).

[6]   The record reflects that Wilkie's counsel at sentencing, Jonathan Sacks, represented him through the completion of sentencing proceedings and the filing of a notice of appeal. (See Crim. Doc. 356; Order Granting Motion to Withdraw). The sentencing transcript also reflects that Mr.

Notably, section 18 on page 10 of the Court's § 2255 form advised Wilkie as follows:

> 18. **TIMELINESS OF MOTION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

§ 2255 Motion at 10. The next page of the § 2255 form advised Wilkie of 28 U.S.C. § 2255's statute of limitations:

> \* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
> A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
> (1) the date on which the judgment of conviction became final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2255 Motion at 11. Despite the admonition, Wilkie left section 18 blank and failed to acknowledge in any way that his § 2255 Motion was untimely or to explain why it should be considered despite the untimeliness.

---

Sacks notified the Court, on record, that he had accepted employment with the State Attorney's Office, beginning at a later date. Sentencing Tr. Vol. III at 93. The record reflects that Mr. Sacks consulted the Florida Bar's ethics hotline (which advised there was not a conflict of interest), that Mr. Sacks had also advised Wilkie of the situation, and that Wilkie wanted Mr. Sacks to continue to represent him. Id. at 93-94. The Court conducted a colloquy with Wilkie to ensure he understood the situation and still wished to proceed with Mr. Sacks, and Wilkie confirmed that he did. Id. at 95-98.

6

In the Response, the United States argues that Wilkie's § 2255 Motion "is untimely and should be dismissed." Response at 1. The United States points out that Wilkie filed the § 2255 Motion more than one year after his conviction and sentence became final. Id. at 3. The United States further argues that Wilkie is not entitled to equitable tolling because he has identified neither extraordinary circumstances nor any efforts to diligently pursue his rights. Id. at 3-4. Thus, the United States contends that the Court should dismiss the § 2255 Motion as time-barred. Id. at 5.

With his Reply, Wilkie submitted a brief affidavit attempting to explain the delay in filing his § 2255 Motion. See Reply; Affidavit. In relevant part Wilkie states:

> 3. That upon the Eleventh Circuit Court of Appeals affirming my case, my appointed counsel did not take the appropriate steps to assure that "I" had became [sic] aware that my appeal had been decided against me, or that the 90 day period for me to file a petition for certiorari with the Supreme Court had started to run.
>
> 4. That upon arriving at F.C.I. Jesup, Ga., I diligently filed my 28 U.S.C. § 2255 motion to vacate, correct, or set aside judgment and sentence.
>
> 5. Had Counsel properly informed me, I would have diligently filed, prior to it's [sic] expiration. Absent Counsel's failure, the motion would have been timely.

Affidavit at 1 ¶¶ 3-5.

Wilkie does not say when or how he actually became aware of the Eleventh Circuit's opinion affirming his conviction and sentence. He may have learned of the Eleventh Circuit's decision anytime in January 2015 after it was issued, in February 2015, or in March 2015. He may have learned of it in July 2016. Or he may have learned of it anytime in between. To be precise, Wilkie does not say when or how he learned of the decision. Instead he says only that his attorney "did not take the appropriate steps" to notify him of the decision, which leaves open the possibility that Wilkie nevertheless received actual

7

notice of the decision through other avenues. Importantly, Wilkie also fails to explain what efforts he made to diligently pursue his rights; he merely claims in a conclusory manner that he was, or would have been, diligent.

**III.     Discussion**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal prisoner may move to vacate, set aside, or correct his sentence within a one-year limitations period. 28 U.S.C. § 2255(f). The statute of limitations runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. "Typically, the applicable triggering date is 'the date on which the judgment of conviction becomes final.'" Beeman v. United States, 871 F.3d 1215, 1219 (11th Cir. 2017) (quoting 28 U.S.C. § 2255(f)(1)), cert. denied, 139 S. Ct. 1168 (2019). The alternative trigger dates set forth in §§ 2255(f)(2)-(4) tend to be the exception rather than the rule.

Here, Wilkie's § 2255 Motion is untimely under § 2255(f)(1) because he failed to file it within one year of when his conviction and sentence became final. As noted earlier, Wilkie's conviction and sentence became final on April 2, 2015, when time expired to file

a petition for certiorari review.[7] Wilkie did not file the § 2255 Motion until July 27, 2016. Thus, nearly one year and four months passed between the date when Wilkie's conviction and sentence became final and the date on which he filed the § 2255 Motion. As such, the motion is not timely under § 2255(f)(1).

Wilkie's Affidavit – which he filed only after the United States argued that the § 2255 Motion was untimely, and after Wilkie ignored section 18 on the § 2255 form – potentially implicates § 2255(f)(4)'s alternative trigger date and equitable tolling. However, neither theory is availing.[8]

Section 2255(f)(4) is inapplicable because that section deals with the delayed discovery of "the facts supporting the claim or claims presented…" 28 U.S.C. § 2255(f)(4) (emphasis added). Appellate counsel's (purported) failure to notify Wilkie of the Eleventh Circuit's adverse decision has nothing to do with "the claim or claims presented" in the § 2255 Motion. The two claims in Wilkie's § 2255 Motion both concern the ineffective assistance of trial counsel, either as it relates to plea negotiations or sentencing. There is no suggestion that the facts supporting those claims were not discoverable until some later date, or that appellate counsel's alleged failure to communicate the Eleventh Circuit's decision to Wilkie affected the discovery of the facts supporting the claims. Indeed, Wilkie was present throughout the change-of-plea colloquy and the sentencing hearing, so Wilkie would have known of the facts supporting his ineffective assistance claims from the date the sentencing proceedings concluded. As such, § 2255(f)(4) is not properly applied to the situation Wilkie describes in his Affidavit.

---

[7] The 90-day period for petitioning for a writ of certiorari runs from the date of the entry of the Eleventh Circuit's opinion, not from the date of the entry of the mandate. Clay, 537 U.S. at 527.
[8] Nothing in the record suggests that either § 2255(f)(2) or § 2255(f)(3) would be applicable.

9

The doctrine of equitable tolling is potentially a better vehicle for Wilkie's claim, but it too is unavailing. Section 2255(f)'s statute of limitations is subject to equitable tolling, Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999), but equitable tolling "is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly,'" Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009)). "To warrant that extraordinary remedy, a petitioner must demonstrate '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Id. (quoting Holland v. Florida, 560 U.S. 631, 649 (2010) ("Holland II")). As to the first prong, equitable tolling requires a prisoner to pursue his rights with "reasonable diligence," although "maximum feasible diligence" is not required. Holland II, 560 U.S. at 653 (citations omitted). As to the second prong, an extraordinary circumstance is one that is both beyond the petitioner's control and unavoidable even with diligence. Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002), overruling on other grounds recognized by Jones v. Sec'y, Fla. Dep't of Corr., 906 F.3d 1339, 1351 (11th Cir. 2018).

"The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), cert. denied, 132 S. Ct. 158 (2011). "A petitioner 'must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue.'" Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1209 (11th Cir. 2014) (quoting Hutchinson v. Florida, 677 F.3d 1097, 1099 (11th Cir. 2012)). As such, "the allegations supporting equitable tolling must be specific and not conclusory." Hutchinson, 677 F.3d at 1099.

Notably, the Eleventh Circuit has specifically held that garden-variety attorney

10

negligence, "and even gross negligence or recklessness, is not an extraordinary circumstance" that will support equitable tolling. Thomas v. Atty. Gen. of Fla., 795 F.3d 1286, 1291 (11th Cir. 2015); see also Holland II, 560 U.S. at 651-52 (a "garden variety" claim of excusable neglect, such as a simple miscalculation that causes a lawyer to miss a filing deadline, does not warrant equitable tolling). Something more is required, such as attorney abandonment, Maples v. Thomas, 132 S. Ct. 912, 922-24 (2012), or bad faith, dishonesty, divided loyalty, or mental impairment, Thomas, 795 F.3d at 1294 (citing Holland v. Florida, 539 F.3d 1334, 1339 (11th Cir. 2008) ("Holland I")). Thus, an "extraordinary circumstance" may exist if the petitioner's counsel willfully deceived the petitioner. See Aragon-Llanos v. United States, 556 F. App'x 826, 828 (11th Cir. 2014); Kicklighter v. United States, 281 F. App'x 926, 930-31 (11th Cir. 2008). In Kicklighter, for example, the Eleventh Circuit found that allegations that a petitioner's attorney repeatedly misled him into believing that counsel was pursuing an appeal suggested an extraordinary circumstance. Kicklighter, 281 F. App'x at 930-31 (petitioner's allegation that his attorney deceived him about an appeal and ignored him for months while the statute of limitations was running, if true, raised issues related to equitable tolling and § 2255(f)(4)). In such a case, if a petitioner also shows he was diligently pursuing his rights, he may be entitled to equitable tolling. See Aragon-Llanos, 556 F. App'x at 828 (petitioner called counsel's office at least 20 times while incarcerated to ask about the status of his appeal, only to be misled by counsel's assistant that counsel was working on it); Kicklighter, 281 F. App'x at 927-28, 931 (petitioner's allegations suggested diligent pursuit of his rights where he, his wife, or his daughter contacted counsel's office "hundreds of times" about the status of an appeal or Rule 35 motion, but were repeatedly given false assurances). Likewise,

> "A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented" timely filing of a § 2255 motion. Drew, 297 F.3d at 1288. However, "not in every case will a prisoner be entitled to equitable tolling until he receives notice." Knight v. Schofield, 292 F.3d 709, 711 (11th Cir. 2002). Although no bright-line rule requires prisoners to directly contact the court system, we have held that "efforts to learn the disposition of pre-federal habeas steps are crucial to determining whether equitable tolling is appropriate." San Martin v. McNeil, 633 F.3d 1257, 1269 (11th Cir.), cert. denied, ––– U.S. –––, 132 S. Ct. 158, 181 L.Ed.2d 73 (2011).

Lopez v. United States, 512 F. App'x 1001, 1003-04 (11th Cir. 2013).

The Court will assume, for the sake of discussion only, that counsel's failure to notify Wilkie of the Eleventh Circuit's decision on direct appeal constitutes an extraordinary circumstance.[9] Nevertheless, Wilkie is not entitled to the benefit of equitable tolling for two reasons. First, it is not clear that counsel's alleged neglect actually prejudiced Wilkie. As noted earlier, Wilkie does not state when or how he ultimately became aware of the Eleventh Circuit's decision on direct appeal. On the record before the Court, Wilkie could have learned of the adverse decision anytime after it was issued in January 2015, leaving him plenty of time to file a § 2255 motion within the statute of limitations. But the Court does not know when Wilkie actually learned of it, because Wilkie only states in conclusory

---

[9] The Court is quite skeptical of whether Wilkie's Affidavit actually suggests the type of extraordinary circumstance that would support the application of the doctrine of equitable tolling. Wilkie contends only that his appellate lawyer failed to properly notify him of the Eleventh Circuit's adverse decision on direct appeal, which Wilkie implies caused him to be unaware of when § 2255(f)(1)'s statute of limitations began to run. But even if Wilkie's lawyer completely failed to notify him of the Eleventh Circuit's decision, that oversight seems more like garden-variety negligence, not the type of abandonment, Maples, 132 S. Ct. at 922-24, or bad faith, dishonesty, divided loyalty, or mental impairment, Thomas, 795 F.3d at 1294 (citing Holland I, 539 F.3d at 1339), that can constitute an extraordinary circumstance justifying equitable tolling. For example, unlike in Kicklighter and Aragon-Llanos, Wilkie does not allege that his attorney affirmatively misled him into believing that his appeal was still pending. Wilkie merely alleges that his attorney "did not take the appropriate steps to assure" that he was aware the appeal had been decided against him, "or that the 90 day period … to file a petition for certiorari with the Supreme Court had started to run." Affidavit at 1 ¶ 3. This seems a far cry from the type of extraordinary circumstances contemplated in Maples and Thomas as supporting equitable tolling.

12

fashion that "[h]ad Counsel properly informed me, I would have diligently filed, prior to it's [sic] expiration. Absent Counsel's failure, the motion would have been timely." Affidavit at 1 ¶ 5 (emphasis added). Notably, this statement does not necessarily support a conclusion that counsel failed to notify Wilkie of the decision at all – only that counsel failed to do so "properly." What exactly Wilkie means by this cannot be discerned from his Affidavit. And regardless of when Wilkie actually learned of the Eleventh Circuit's decision, the Eleventh Circuit's opinion was a matter of public record the moment the court docketed it. Because Wilkie fails to explain when or how he actually learned of the decision, the Court has no basis to conclude that counsel's failure prevented him from timely filing his § 2255 Motion.

Wilkie's invocation of the doctrine of equitable tolling also fails because he has not shown diligence in pursuing his rights. Wilkie has the burden of proving circumstances justifying equitable tolling, San Martin, 633 F.3d at 1268, and "the allegations supporting equitable tolling must be specific and not conclusory," Hutchinson, 677 F.3d at 1099. But Wilkie's Affidavit fails to provide any specific, non-conclusory allegations supporting a conclusion that he was reasonably diligent in pursuing his rights. Regarding diligence, Wilkie only alleges:

> 4. That upon arriving at F.C.I. Jesup, Ga., I diligently filed my 28 U.S.C. § 2255 motion to vacate, correct, or set aside judgment and sentence.
> 
> 5. Had Counsel properly informed me, I would have diligently filed, prior to it's [sic] expiration. Absent Counsel's failure, the motion would have been timely.

Affidavit at 1 ¶¶ 4, 5. Wilkie does not offer any details about what efforts he made to follow up about his appeal, when or how frequently he made those efforts, or what responses he received. Thus, this is not the case of a petitioner who repeatedly tried to ascertain the status of his case, only to be repeatedly ignored or misled by his attorneys. Cf. Holland II,

560 U.S. at 653 ("Here, Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.") (emphasis in original); Aragon-Llanos, 556 F. App'x at 828 (petitioner called counsel's office at least 20 times to ask about the status of his appeal, only to be misled by counsel's assistant that counsel was working on it); Kicklighter, 281 F. App'x at 927-28, 931 (petitioner's allegations suggested diligent pursuit of his rights where he, his wife, or his daughter contacted counsel's office "hundreds of times" about the status of an appeal or Rule 35 motion).

Instead, this case resembles Lopez, where the petitioner argued he was entitled to equitable tolling because his attorney failed to notify him of the Eleventh Circuit's adverse opinion on direct appeal. 512 F. App'x 1001. Notably, Lopez's description of his alleged efforts were even more substantial than what Wilkie alleges. Indeed, Lopez "argue[d] that he was reasonably diligent in seeking updates on his appeal because he tried to call his attorney monthly throughout 2009 and early 2010, and sent his attorney letters on July 8, 2010, and August 7, 2010." Id. at 1002. Despite this, the Eleventh Circuit found that "Lopez's alleged attempts to contact his attorney by phone and mail are largely unsupported by the record evidence. Instead, the earliest specific date that he wrote to his attorney was July 8, 2010, nearly eleven months into the one-year statute of limitations." Id. at 1004. The court observed that "Lopez made no attempt to contact either the district

14

court, nor this Court, regarding the status of his appeal during 2009 and most of 2010 despite having previously inquired about the status of his appeal in 2007," and that Lopez had not "alleged that he sought help from anyone else or consulted with anyone regarding his attorney's alleged non-responsiveness." Id. As a result, the court concluded that Lopez had not demonstrated the exercise of reasonable diligence. Id. at 1005.

Here, Wilkie could have learned of the decision at any time after January 2, 2015, by contacting the clerk of court for this Court or the Eleventh Circuit, or by conducting a public docket search. However, there is no indication that Wilkie made any such efforts at any time before filing the § 2255 Motion on July 27, 2016, over a year and six months after the Eleventh Circuit issued its opinion. Indeed, Wilkie does not even allege that he attempted to contact anyone at any point to inquire about the status of his appeal. See Affidavit. Instead, Wilkie merely asserts in conclusory fashion that he was "diligent" in filing his § 2255 Motion. That is not enough. Wilkie does not allege, much less point the Court to any evidence, that he undertook reasonably diligent efforts to learn the status of his appeal or to preserve his rights. As such, Wilkie is not entitled to the benefit of the doctrine of equitable tolling because he has failed to make specific, non-conclusory allegations that he exercised reasonable diligence.[10]

## IV. Conclusion

Wilkie's § 2255 Motion is time-barred because he filed it more than one year after his conviction and sentence became final. Having considered Wilkie's Affidavit, and having

---

[10] Wilkie has not argued that he can overcome § 2255(f)'s statute of limitations under the actual innocence exception.

15

considered whether § 2255(f)(4) or equitable tolling are applicable, the Court finds that the untimeliness cannot be excused. As such, the § 2255 Motion is due to be dismissed.

## V. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Wilkie "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Andrew Chase Wilkie's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 2) is **DISMISSED**.

2. The Clerk is directed to enter judgment in favor of the United States and against Wilkie, and close the file.

3. If Wilkie appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of July, 2019.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner